[No. 31765.   Department One.   November 5, 1951.]

FRANK C. RUSSELL *et al., Respondents,* v. THE CITY OF
GRANDVIEW *et al., Appellants.*[1]

¹Reported in 236 P. (2d) 1061.

*Gordon Blechschmidt, Velikanje & Velikanje,* and *John S. Moore, Jr.,* for appellants.

*Walter V. Swanson, Douglas A. Wilson,* and *Gavin & Robinson,* for respondents.

GRADY, J.—This is an appeal by the city of Grandview and Earle Bugge, its water superintendent, from judgments awarding damages for injuries sustained by the individual respondents and for the recovery of money paid on fire insurance policies by the corporate respondents. The two actions maintained by the respective respondents were con-

solidated for trial and also for the appeal. Reference to respondents will concern the individuals unless otherwise specified.

On and prior to October 26, 1949, the city of Grandview owned and operated a municipal water plant for the purpose of furnishing a domestic water supply to its inhabitants. The water was pumped from wells into the distribution system. Combustible gas from the wells affected the water pressure. The water superintendent informed respondents that if they would leave the faucets open the gas pressure would be released and the water would soon flow.

On the morning of October 26th, the respondents had no flow of water. Two sink faucets and those serving the bath tub and wash basin were opened. Shortly thereafter, hissing sounds were heard coming from the faucets. While one of respondents was preparing breakfast on the kitchen stove, the gas that had come into the home exploded, injuring respondents, wrecking the dwelling house, and causing fire damage. Reference to other facts will be made in the discussion of assignments of error.

■■ The city urges nonliability on its part upon the theory that in the operation of its water system it was performing a governmental function. The law in this state is to the contrary. *Bjork v. Tacoma,* 76 Wash. 225, 135 Pac. 1005; *Aronson v. Everett,* 136 Wash. 312, 239 Pac. 1011; *Shandrow v. Tacoma,* 188 Wash. 389, 62 P. (2d) 1090. We decided in those cases that a city engaged in such an activity acts in its proprietary capacity and is liable for negligence the same as any private corporation engaged in the same business. Cities are limited governmental arms of the state, and when permitted by the state to engage in activities normally performed by private enterprise, they, to that extent, depart from their governmental functions. The fact that some of the water is used in fire protection and in connection with health and sanitation is not material. The negligence of which complaint was made did not arise in the performance of such functions.

Nonliability is also urged upon the ground that appellants did not have notice either that the water system contained

methane gas or that the gas therein was of a dangerous or explosive character. The argument is made that even though the city knew that the water contained an element known as hydrogen sulphide, it did not know that methane gas came from the wells or that it was of an explosive character.

■ The city seeks to draw an analogy between the facts of this case and those involved in cases where injuries were sustained arising out of defects in streets or sidewalks, or obstructions in the way of the normal use thereof, or breaks in pipes carrying gas. Liability in such cases, and those of like import, arises out of negligence in failure to keep the instrumentalities in a proper state of repair. If the defects do not occur by reason of active negligence upon the part of the city, the duty to repair cannot arise until the city has actual or constructive notice of the defects. The city becomes negligent when, after such notice, it fails to make the necessary repairs. If, however, the dangerous condition is caused by agents of the city in the performance of their duties, the rule of liability is not based on notice and failure to repair, but upon the creation of a dangerous condition by the city. *Nevala v. Ironwood,* 232 Mich. 316, 205 N. W. 93, 50 A. L. R. 1189, and annotation appended.

■ In this case, we have a situation where the city negligently permitted an explosive gas to enter its water system. It knew that gas came from one or more of the wells and that such gas was combustible. Complaints had been made of the presence of gas in the pipes to such an extent that it retarded the flow of water. The water superintendent advised respondents to open the faucets so as to relieve the gas pressure. It was the duty of the city to promptly ascertain the nature and character of the gas coming from its wells and to determine whether the presence of such gas was likely to be dangerous to users of the water, and if so, to separate the gas from the water before supplying the latter to its patrons. Liability in this case arises out of the active negligence of the city and not by reason of failure to act after having actual or constructive notice of the exis-

tence of a danger. These principles find expression in 25 Am. Jur. 729, Highways, § 438; 63 C. J. S. 163, 164, Municipal Corporations, § 825; *Lasityr v. Olympia,* 61 Wash. 651, 112 Pac. 752; *Colquhon v. Hoquiam,* 120 Wash. 391, 207 Pac. 664. In these cases, it appeared that the cities had given permission to abutting owners to obstruct a street and lay a sidewalk, and it was decided that they were in the same position as to liability as if they had done the acts themselves. Notice as a condition precedent to liability was not deemed essential.

■ The appellants assert that respondents were guilty of contributory negligence, both primary and imputed, because of the conduct of one or more of them and their knowledge of probable danger if the gas became ignited. The basis of appellants' argument is that respondents knew of the presence of gas in the water, they had seen pictures of the mayor of the city lighting gas coming from a vent pipe in the water system, they had observed that the gas pressure the morning the explosion took place was much greater than it had ever been before, they had left the faucets open for two and one-half hours and heard a hissing noise coming therefrom, and had kept the doors and windows of the house closed during that time.

This argument does not take into consideration the fact that respondents had no knowledge of the explosive quality of the gas. All the experience they had with it was that it retarded the flow of water. They had been told how to relieve such condition. They were not required to make any tests of the gas to determine its character. It had not affected the quality of the water for domestic use. There was nothing that had occurred to cause them as reasonably prudent water users to anticipate or foresee that in relieving the pressure through the water faucets an explosion might occur when they shut off their kitchen range.

The court submitted the issue of contributory negligence to the jury by instructions as favorable to appellants as the law on the subject warranted. The jury reached a conclu-

sion fully supported by the facts and the law applicable thereto.

Error is assigned in the failure of the court to give proposed instructions set forth in the brief of appellants.

The court was requested to inform the jury that no liability existed against Earle Bugge, the water superintendent, upon the theory that he merely acted in his official capacity and within his instructions, and that his actions were not a proximate cause of the accident.

■■ In the performance of its duties owing to its patrons, the city acted by and through the water superintendent. It was his duty to exercise reasonable and ordinary care to so operate the water system under his charge as to prevent the entering of explosive gas into the water pipes. It was his acts and omissions which, to a great extent, though not exclusively so, incurred liability on the part of the city. It is elementary that an agent whose negligent acts or omissions in the performance of the duties entrusted to him renders his principal liable in damages, is also liable for his own negligence. The court properly submitted the question of negligence on the part of the water superintendent to the jury.

■ A proposed instruction dealt with the subject of notice of the explosive quality of the gas and the absence of notice of the manner in which respondents might treat such gas. The instruction also covered the element of absence of negligence on the part of appellants and contributory negligence on the part of respondents. It was so involved that for this reason alone the court was justified in its rejection. However, the material and applicable questions were adequately submitted to the jury in the instructions given by the court.

We have examined the other proposed instructions set forth in appellants' brief and find that the parts thereof which were either applicable or contained correct statements of law were included in instructions given, and therefore we are able to say that no error was committed in not giving them as proposed.

Error is assigned for failure to take from the jury the question of loss of wages of respondent Frank C. Russell and the failure of the court to award a new trial upon the ground that some of the awards of damages to various respondents were excessive. The argument is made that, taking into consideration the fact that after the accident Russell drew unemployment compensation, and that he had no assurance of a continuation of his employment at the time of the accident, loss of wages would be speculative.

The cause of action relating to the damages sustained by Russell contained an item of $1,207.05, loss of wages, $205.10, hospital and doctor bills, and $6,000 general damages. The court gave the jury a correct instruction upon the measure of damages. There was evidence submitted from which the jury could find that Russell sustained some time loss. The jury returned a verdict for Russell in the sum of $3,205.10. We are unable to make a mathematical segregation of the award, except as to the item of $205.10.

We find in the record an affidavit of one of the jurors purporting to set forth the amount awarded for loss of earnings, but this cannot be considered, as to do so would permit a juror to impeach the verdict. *Purdy v. Sherman,* 74 Wash. 309, 133 Pac. 440.

The trial court refused to disturb the award by either reducing the amount with the option to accept or have a new trial or by granting a new trial. We find no error in that respect.

We have given consideration to the awards made to the other respondents and the arguments made by appellants with reference thereto. Two of the respondents sustained very severe injuries. Our review of the record convinces us that there is nothing to justify the claim made that in arriving at their verdicts the jurors were influenced in any way by passion or prejudice.

The judgments are affirmed.

MALLERY, HILL, DONWORTH, and WEAVER, JJ., concur.